IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| DONG LIN ET AL. | |
|---|---|
| Plaintiffs, | |
| v. | CIVIL ACTION NO. 10-333 |
| SPRING MOUNTAIN ADVENTURES, INC., | |
| Defendant. | |

MEMORANDUM

**Tucker, J.**                                                                                       **December 17, 2010**

Presently before this Court is Defendant Spring Mountain Adventures, Inc.'s Motion for Summary Judgment pursuant to Fed. R. Civ. P. 56 (Doc. 10) and Plaintiffs' Response in Opposition to Defendant's Motion for Summary Judgment (Doc. 13). Upon consideration of the parties' motions with exhibits and declarations, this Court will grant Defendant's Motion for Summary Judgment.

## I. BACKGROUND

This diversity suit filed pursuant to 29 U.S.C.§ 1332, arises from the losses sustained by New Jersey residents Dong Lin and Yaning Wang ("Plaintiffs") as the result of a skiing accident. Said accident occurred at the Spring Mountain ski area in Spring Mount, Pennsylvania, owned by Pennsylvania corporation Spring Mountain Adventures, Inc. ("Defendant"). (Compl. ¶ 1, 2, 6.) Specifically, Plaintiffs allege that Plaintiff Lin suffered physical injuries, and as a result, her husband, Plaintiff Wang suffered loss of consortium due to the Defendant's carelessness,

1

negligence, gross negligence, recklessness, and wanton disregard for the Plaintiffs' safety and interest. (Compl. ¶ 16, 25, 28.)

On or about February 16, 2008, Plaintiffs accompanied friends to visit the Defendant's Spring Mountain ski area. (Compl. ¶ 8.) Prior to skiing and renting ski equipment, Plaintiff Lin signed the required form provided by the facility, titled "Equipment Rental Form and Release From Liability" (Spring Mountain Ex. D-1) (Lin Dep. 25:1-17, Apr. 16, 2010.)

As Plaintiff Lin was skiing, she lost control and fell or slid into a snow making machine that was located on the slopes and was partially padded. Allegedly, the blue padding used to cover the snow making equipment separated, allowing Plaintiff Lin to violently strike the unprotected pipe behind the padding. (Compl. ¶ 14.) As a result of her collision with the equipment, Plaintiff Lin suffered several permanent and many disfiguring injuries, including but not limited to injuries to her face, jaw, skull, pallet, nose, teeth, gums, neck, back, bones, brain, muscles, and nerves. (Compl. ¶ 16.) Due to her injuries, Plaintiff Lin underwent surgical procedures and incurred medical expenses. Plaintiff Lin alleges that her injuries caused her pain and suffering, lost ability to engage in activities of daily living, emotional harm, lost wages, and both current and future medical expenses. (Compl. ¶¶ 17-21.)

On January 26, 2010, Plaintiffs filed this suit in the United States District Court of the Eastern District of Pennsylvania against the Defendant. Plaintiffs seek damages in excess of $75,000, in addition to interest and costs. (Compl. ¶¶ 6, 25, 28.)

## II. STANDARD OF REVIEW

Summary judgment is appropriate where the moving party establishes that "there is no genuine issue as to any material fact and that [it] is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56©. See Levy v. Sterling Holding Co., LLC, 544 F.3d 493, 501 (3d Cir. 2008). A factual dispute between the parties will not defeat a motion for summary judgment unless it is both genuine and material. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986); Dee v. Borough of Dunmore, 549 F.3d 225, 229 (3d Cir. 2008). A factual dispute is genuine if a reasonable jury could return a verdict for the non-movant, and it is material if, under the substantive law, it would affect the outcome of the suit. See Anderson, 477 U.S. at 248; Fakete v. Aetna, Inc., 308 F.3d 335, 337 (3d Cir. 2002).

The moving party must show that if the evidentiary material of record were reduced to admissible evidence in court, it would be insufficient to permit the non-moving party to carry its burden of proof. See Celotex v. Catrett, 477 U.S. 317, 327 (1986). Once the moving party has carried its burden under Rule 56, "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." Scott v. Harris, 550 U.S. 372, 380 (2007) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986)). Under Federal Rule of Civil Procedure 56(e), the opposing party must set forth specific facts showing a genuine issue for trial and may not rest upon the mere allegations or denials of its pleadings. See Martin v. Godwin, 499 F.3d 290, 295 (3d Cir. 2007).

At the summary judgment stage the court's function is not to weigh the evidence and determine the truth of the matter, but rather to determine whether there is a genuine issue for trial. See Anderson, 477 U.S. at 249; Jiminez v. All American Rathskeller, Inc., 503 F.3d 247,

253 (3d Cir. 2007). In doing so, the court must construe the facts and inferences in the light most favorable to the non-moving party. See Matsushita, 475 U.S. at 600-01; Horsehead Indus., Inc. v. Paramount Communications, Inc., 258 F.3d 132 (3d Cir. 2001). The court must award summary judgment on all claims unless the non-moving party shows through affidavits or admissible evidence that an issue of material fact remains. See, e.g., Love v. Rancocas Hosp., 270 F. Supp. 2d 576, 579 (D.N.J. 2003); Koch Materials Co. v. Shore Slurry Seal, Inc., 205 F. Supp. 2d 324, 330 (D.N.J. 2002).

### III. DISCUSSION

Defendant Spring Mountain Adventures, Inc. proposes two arguments in support of its summary judgment motion. First, Defendant submits that the Equipment Rental Form and Release From Liability (the "Release") signed by Plaintiff Lin contained a valid release of liability in favor of the Defendant, where Plaintiff Lin agreed not to sue the Defendant. In addition, the Defendant proposes that Plaintiff Lin's accident was a result of the inherent risk associated with the activity of skiing, for which the Defendant should not have any liability.

#### A. Equipment Rental Form and Release From Liability was Valid

On February 18, 2008, prior to skiing, Plaintiff Lin signed the Release, which included the following title line on the front page in bold capitalized print: "**EQUIPMENT RENTAL FORM AND RELEASE FROM LIABILITY.**"

Also on the front page of the Release was a capitalized, blocked section in the center of the page, above the signature line, instructing the reader to "PLEASE READ THE AGREEMENT ON THE BACK OF THIS FORM BEFORE SIGNING. IT RELEASES US FROM CERTAIN LIABILITY." Directly between the instruction to read the back of the release and the signature

line was the following statement: "I, the undersigned, have carefully read and understood the Acceptance of Risk and Liability Release on the back of this paper." (Release, 1.)

The back page of the Release contained the following relevant language concerning acceptance of risk and release from liability:

> **Acknowledgment & Acceptance of Risks and Liability Release (Please Read Carefully)**
>
> **WARNING:** '...Be alert to continually changing weather, visibility and surface conditions, and other inherent risks including but not limited to...snowmaking and snowgrooming equipment...'
>
> 1. As a condition of being permitted to use the ski are premises and to use this equipment (ski/snowboard/bike/blades), I hereby release, Hold Harmless, and Indemnify Spring Mountain Adventure, Inc., Third Generation Limited Partnership, Mountain Management, LLC, their owners, affiliates, employees and agents, the equipment manufacturers and distributors (the Releasees) and all liability for personal injury including death and property damage in any way arising from the use of this equipment including but not limited to any alleged NEGLIGENCE on the part of the Releasees in the selection, installation, maintenance or adjustment to this equipment and its use. This Release is intended to comply with the laws of the State in which it is used and only to the extent allowed by law. If any part of this agreement is determined to be unenforceable, all other parts shall be given full force and effect.
>
> 2. I understand and acknowledge the risks of injury and death that are a part of the alpine activities conducted at the ski resort. I am aware that all forms of alpine activities, including jumping, are hazardous, filled with high risks and that falls, collisions and injuries are common occurrences of the sport. Therefore, for myself, my heirs and assigns I accept these risks, and Promise Not to Sue the Releasees for any and all losses and injury to person or property that may result from my participation in the alpine activities at this resort and from the inherent risks such as (but not limited to) those listed in the Warning above." (Release, 2.)

Defendant Spring Mountain argues that the Release is valid and enforceable. In this diversity action, this Court must consider Pennsylvania law and apply it to the facts at hand. Berrier v. Simplicity Mfg., Inc., 563 F.3d 38, 46 (3d Cir. 2009) (citing Erie R.R. Co. v. Tompkins, 304 U.S. 64, 58 S. Ct. 817, 82 L. Ed. 1188 (1938)). Under Pennsylvania law, exculpatory contracts, such as the Release in this case, "are not favorites of the law and will be construed strictly." Employers Liab. Assurance Corp. v. Greenville Bus. Men's Ass'n, 423 Pa. 288, 224 A.2d 620, 623 (Pa. 1966)). Exculpatory clauses are facially valid and enforceable where the following three conditions are met: (1) the contract or clause must not contravene public policy; (2) the contract or clause must be between persons relating entirely to their own private affairs; and (3) each party must be a free bargaining agent, so that the contract is not one of adhesion. Chepkevich v. Hidden Valley, 2 A.3d 1174, 1177 (Pa. 2010); Princeton Sportswear Corp. v. H & M Associates, 507 A.2d 339, 341 (Pa. 1986); Employers Liab. Assurance Corp. v. Greenville Bus. Men's Ass'n, 423 Pa. 288, 224 A.2d 620, 622-23 (Pa. 1966).

However, exculpatory clauses that meet the facial validity test may still be deemed invalid if the language of the clause is equivocal concerning whether the entity being release from liability is being exculpated from liability for his own acts of negligence. Dilks v. Flohr Chevrolet, 192 A.2d 682, 687-88 (Pa. 1963). Because Plaintiffs decline to challenge the facial validity of the exculpatory clause at issue, this Court need not address the aforementioned facial validity factors. Instead, we address the circumstances which Plaintiffs claim make the exculpatory clause at issue unenforceable.

In the present matter, Plaintiffs claim that despite the facial validity of the exculpatory clause in the Release, the clause is unenforceable against Plaintiffs because: (1) it was not

presented in the manner in which Plaintiff Lin understood the terms in order to provide her assent; and (2) the language contained therein fails to clearly establish that the Defendant is relieved of liability for its own acts of negligence.

### 1. **Assent of Plaintiff Lin**

Both Pennsylvania state courts and federal courts applying Pennsylvania state law have addressed the validity of exculpatory clauses related to alpine activities. Chepkevich, 2 A.3d at 1192 (finding the ski resort Release of Liability form valid and enforceable, with sufficiently large and prominently displayed language to inform patron that she gave up her right to sue); Saverese v. Camelback Ski Resort, 417 F.Supp.2d 663 (M.D. Pa. 2005) (concluding exculpatory language not a contract of adhesion because it related to purely recreational activities and release language clearly expressed the parties' intent); Anderson v. Bear Creek Mountain, No. 06-14343 (Berks Co. 2008) (finding release legally effective because terms were bolded and placed in a conspicuous location); Checket v. The Tuthill Corp., No. 99-1819 (Carbon Co. 2001) (holding release from liability enforceable where it expressly stated that plaintiff assumed all risk of injury and agreed to release defendant from all liability, including liability arising from negligence). Cf. Beck-Hummel v. Ski Shawnee, 902 A.2d 1266 (Pa. Super 2006) (finding genuine issue of material fact as to whether exculpatory release on back of snow tubing ticket was enforceable).

In order for a release of liability to be enforceable where it explicitly specifies that an individual assumes the risk of participating in an activity, and where the plaintiff merely receives the release and does not sign it, the facts must show that the terms of the contract were "brought home" to the signor. See Beck-Hummel v. Ski Shawnee, 902 A.2d 1266, 1274-75 (Pa. Super. 2006). In Beck-Hummel, relied upon by Plaintiffs, the court determined that plaintiff's assent to

7

the terms of the disclaimer was not clearly established. According to the court, because the snow tubing ticket was purchased by the plaintiff's husband, and contained inconspicuous disclaimer language on its reverse side, the disclaimer terms were not "brought home", or understood by the plaintiff. Furthermore, the court found it persuasive that the plaintiff did not sign a release form, and that none of the defendant's employees verbally informed the plaintiff that she was entering into a contractual agreement by using the ticket. Thus, summary judgment was deemed inappropriate. Id. at 1275.

By contrast, in Chepkevich, relied upon by the Defendant, the Pennsylvania Supreme Court granted summary judgment in favor of a defendant ski resort, where the plaintiff skier, in advance of using the defendant's ski lift and sustaining injuries, signed a full-page form titled "RELEASE FROM LIABILITY" which included exculpatory language in the same font size as the rest of the form. 2 A.3d 1174, 1192, 1195 (Pa. 2010). Distinguishing the facts before the court from those in the Beck-Hummel case, the court noted that the Plaintiff provided her assent to the release based on the following:

> "Whether or not [Plaintiff] availed herself of the opportunity to read the Release she signed, we cannot agree that a full-page, detailed agreement, written in normal font and titled "RELEASE FROM LIABILITY" constitutes an insufficient effort on the part of Hidden Valley to inform [Plaintiff] of the fact that, by signing and purchasing a lift ticker, she was giving up any right she might have to sue for damages arising from injuries caused even by negligence." Id. at 1192.

This Court agrees with Defendant, and finds that this case is most similar to Chepkevich, and is not analogous to Beck-Hummel, as Plaintiffs proffer. Unlike Beck-Hummel, in this matter, Plaintiff Lin was not a mere recipient of a release printed on a ticket, but was a voluntary signatory to a full-sized contract. In this case, similar to the plaintiff in Chepkevich, Plaintiff Lin

8

signed the release form herself, and such form contained the bolded front-page title "**EQUIPMENT RENTAL FORM AND RELEASE FROM LIABILITY**", giving Plaintiff Lin notice of the form's purpose and content. Furthermore, Plaintiff Lin's signature is immediately preceded by instructions guiding her to read the back of the form. Specifically, the following blocked off language read: "PLEASE READ THE AGREEMENT ON THE BACK OF THIS FORM BEFORE SIGNING. IT RELEASES US FROM CERTAIN LIABILITY." Furthermore, the next line directly above the signature line read: "I, the undersigned, have carefully read and understood the Acceptance of Risk and Liability Release on the back of this paper." (Release, 1.)

Contrary to the Plaintiffs' contention, the fact that the actual Release language on the reverse side of the form was the same font size as other language on the same page does not make the release unenforceable, nor does it negate the fact that the Defendant gave the Plaintiff Lin clear notice of the release from liability, as well as ample opportunity to provide her assent prior to signing the form. On the form's reverse side, the bolded, enlarged title line reads "**Acknowledgment & Acceptance of Risks and Liability Release (Please Read Carefully).**" (Release, 2.) The exculpatory language, listed in subsequent paragraphs, is in a smaller, yet clearly readable font size. At the bottom of the page is the following bolded statement: "**I have carefully read and understood the Acceptance of Risk and Liability Release and have signed the front of this form.**" Thus, Plaintiff Lin provided her assent by signing the form, which provided her with ample notice of the release terms, as outlined above.

Plaintiff Lin cannot rely on the arguments which succeeded in <u>Beck-Hummel</u>, as the facts of this case are distinguishable. Plaintiff Lin signed the release form herself for skiing and ski rental, unlike the Plaintiff in <u>Beck-Hummel</u> who was merely presented with a snow tubing ticket

that she did not secure nor sign herself. Plaintiff Lin was provided with a readable form, not a small unreadable ticket. Such form provided notice and clear terms concerning release of liability. Plaintiff admitted that she willfully declined to read the release language, despite the clear instructions on the face of the Release form directing her to do so. (Lin Dep. 25:24, Apr. 16, 2010).

It is a well established rule under Pennsylvania law that failure to read a contract does not relieve a party of their obligation under such contract that they sign, and such parties will be bound by the agreement without regard to whether the terms were read and fully understood. "One about to sign a contract is duty bound to read it. Even if one carelessly signs a writing, they will not be relieved of their own negligence." Ruocco v. Camelback Ski Resort, 3:CV-02-0393 2002 (M.D.Pa. 2002); see also Lewis v. Dunlap, 5 Pa. Super. 625 (1897); Leuten Brick Co. v. Killen, 83 A. 576 (Pa. 1912).

In five different places, three times on the front and two on the back, the Release states that it is a release from liability. Two of these statements immediately precede Plaintiff Lin's signature. Plaintiff Lin, based on her own testimony, was aware that signing the forms were a prerequisite to using skiing facilities such as the Defendant's. (Lin Dep. 25:19-22, Apr. 16, 2010). As in Chepkevich, this Court considers all of the relevant circumstances and concludes that Defendant Spring Mountain put forth sufficient effort to inform Plaintiff that, by signing the Equipment Rental and Release from Liability form, she was agreeing to release the Defendant from certain liability that may result from her use of the skiing facility. The Plaintiffs' assertion that Plaintiff Lin believed that she was simply filling out a form for the purpose of renting equipment is unreasonable.

2. Language of the Release

Plaintiffs' next argument is that the language contained in the Release does not clearly establish that Defendant Spring Mountain is being relieved of liability for its own acts of negligence. Exculpatory clauses are to be construed strictly; however, courts must also use common sense in interpreting such agreements. Zimmer v. Mitchell and Ness, 385 A.2d 437, 439 (1978). The fact that the word "negligence" is not included in the language of the exculpatory clause is not fatal. Id. at 440 (stating that "to say that negligent conduct is not included in 'any liability' is patently incorrect."); see also Cannon v. Bresch, 160 A. 595, 596 (Pa. 1932) (stating that "the terms are emphatic-the word 'all' needs no definition; it includes everything, and excludes nothing. There is no more comprehensive word in the language, and as used here it is obviously broad enough to cover liability for negligence."); Schillachi v. Flying Dutchman Motorcycle Club, 751 F. Supp. 1169, 1173-74 (E.D.Pa. 1990) (finding that Release form releasing defendant from "all liability" included negligent conduct).

Taken as a whole, using strict but common sense interpretation, it is clear that the Release form in question releases the Defendant from liability for injuries such as those sustained by Plaintiff Lin, even if due to Defendant's own negligence. The form's exculpatory language provides a bolded "**WARNING**" section, which includes the warning to the skier to be alert to, *inter alia,* snowmaking and snowgrooming equipment. Defendant relies heavily on paragraph 2 of the back of the Release, which states:

> I understand and acknowledge the risks of injury and death that are a part of the alpine activities conducted at the ski resort. I am aware that all forms of alpine activities, including jumping, are hazardous, filled with high risks and that falls, collisions and injuries are common occurrences of the sport. Therefore, for myself, my heirs and assigns *I*

11

> *accept these risks, and Promise Not to Sue the Releasees for any and all losses and injury to person or property that may result from my participation in the alpine activities at this resort and from the inherent risks such as (but not limited to) those listed in the Warning above*."
> (Release, 2.) (emphasis added).

Clearly, the accident that befell Plaintiff Lin - a collision with snow making equipment - is the sort contemplated by both the Warning and paragraph 2. Despite the fact that the "Promise Not to Sue" language of paragraph 2 does not contain the word "negligence," the common sense reading of this sentence releases Defendant Spring Mountain from any and all liability, including negligence.[1]

### B.     Inherent Risk in Skiing

Shortly after passing the Comparative Negligence Act in 1987 (42 Pa.C.S. §7102(a)-(b)) in the Commonwealth of Pennsylvania, the General Assembly amended the statute to include the Skier's Responsibility Act (the "Act"). The Act explicitly preserves the common law assumption of risk defense in the realm of injuries suffered while downhill skiing. 42 Pa.C.S. §7102©. The Act states that "[i]t is recognized that as in some other sports, there are inherent risks in the sport of downhill skiing...The doctrine of voluntary assumption of risk as it applies to downhill skiing injuries and damages is not modified by 42 Pa. C.S. §§7102(a) and (b)." Id.

The assumption of risk defense has been described as a "no-duty" rule, such that

---

[1] This is the same conclusion drawn in Ruocco v. Camelback Ski Resort, No. 3:CV-02-0393 (M.D. Pa. 2002), a case with similar facts to the matter before this Court. In Ruocco, where the plaintiff's decedent signed a general release prior to skiing at the Camelback Ski Resort, the court interpreted the following language to clearly release the defendant from any liability, despite the fact that the word "negligence" was not included:

> I AGREE THAT I WILL NOT SUE CAMELBACK OR ITS AGENTS OR
> EMPLOYEES (EITHER ON MY OWN BEHALF OR ON THE BEHALF OF MY SPOUSE,
> CHILD OR WARD) FOR INJURIES OR DAMAGES RELATING TO SKIING,
> SNOWBOARDING AND/OR SNOWBLADING AND/OR THE USE OF EQUIPMENT.

Ruocco, at 7.

owners or operators of places of amusement such as ski resorts are absolved of any duty to protect users of their facilities from the dangers inherent in the activity. Hughes v. Seven Springs Farm, Inc., 762 a.2d 339, 343-44 (Pa. 2000) (discussing Jones v. Three Rivers Mgmt. Corp., 394 A.2d 546 (Pa. 1978)). The Pennsylvania Supreme Court has established that the "no-duty" rule is applicable to ski resort operators. "Ski resorts have no duty to protect skiers from risks that are 'common, frequent, and expected' and thus 'inherent' to the sport of downhill skiing." Chepkevich, 2 A.3d at 1186. Negligence principles are irrelevant where the "no duty" rule applies. Thus, if the patron of a ski resort assumes the inherent risks of skiing, the ski resort owner has no duty, and the injured party may not be granted recovery for any alleged negligence of the defendant. Id.

The Court in Hughes developed a two-part inquiry for determining whether a skier assumed the risk of her particular injury. The threshold question is whether the skier was engaged in the sport of downhill skiing at the time of the injury. If the answer to the first inquiry is affirmative, the court must then determine whether the particular injury arose out of a risk inherent in the sport of skiing. Hughes, 762 A.2d at 344. Without question, Plaintiff Lin's injuries arose while she was downhill skiing. The determinative question, then, is whether her particular injury arose out of a risk of inherent in the sport of skiing.

Given the clear legislative intent to preserve the assumption of risk defense in the area of downhill skiing, in addition to the broad language of the Act, the interpretation of what constitutes inherent risks must be practical and logical. Chepkevich, 2 A.3d at 1188. Collisions with equipment necessary for the operation of a ski facility, such as snow making equipment, are undoubtedly a risk inherent in the sport of skiing. Indeed, collisions with such equipment were

specifically listed as one of the inherent risks of skiing in the Release signed by Plaintiff Lin.

Pennsylvania courts have consistently held that collisions with objects and other skiers are inherent risks of the sport of downhill skiing in the state of Pennsylvania. See, e.g., Bjorgung v. Whitetail Resort, L.P., 550 F.3d 263 (3d Cir. 2008) (finding ski resort owed no duty under the Act to protect skier from lack of safety netting where skier veered off course and struck a tree); Hughes v. Seven Springs Farms, Inc., 762 A.2d 339 (concluding that collision with another skier at the base of slope was an inherent risk of skiing); Savarese v. Camelback Ski Corp., 417 F. Supp.2d 663, 665-66 (M.D.Pa., 2005) (being struck by ski lift chair is an inherent risk of skiing); Smith v. Seven Springs Farm, Inc., 716 F.2d 1002 (3d Cir. 1983) (finding skier assumed risk of injury when he voluntarily chose to ski on expert slope where he saw others encountering difficulty, and where unpadded poles from snow making equipment lined the center of the head wall). In Chepkevich, the Supreme Court of Pennsylvania determined that characteristics such as whether the collision in question was "common, frequent and expected", and whether the activity was "inherently dangerous", are critical to the determination of whether a risk is inherent under the Act. Chepkevich at 1187.

Applying Pennsylvania law to the question of whether the collision at hand constitutes an inherent risk, the injury suffered by Plaintiff Lin when she collided with the snow making equipment arose out of a risk inherent to the sport of skiing. Incidentally, Plaintiff Lin herself conceded that "...I know that skiing is a dangerous sport. I know that accidents happen all the time...I know that it involves some risk." Plaintiff Lin went on to state that she believed that her situation was different. (Lin Dep. 26:3-6, Apr. 16, 2010). This Court disagrees. Snow making equipment is essential to the alpine activity of skiing, and impossible without it. Thus, it is logical

14

that a user of a ski resort would expect the presence and potential hazard of snow making equipment on the slopes. A person using a ski resort should also reasonably anticipate the dangers of obstructions on the slopes, and the hazards associated with avoiding such obstructions when engaging in downhill skiing. Plaintiff Lin voluntarily engaged in the dangerous sport of skiing, and thus under the Act, she assumed all inherent risks, including the inherent risk of colliding with snow making equipment with allegedly improper padding.

### IV. CONCLUSION

Based on the evidence provided, and the circumstances surrounding Plaintiff Lin's signing of the Release, this Court concludes that there is no genuine issue of material fact in this matter and the Defendant is entitled to judgment as a matter of law. The exculpatory clause contained in the Release is valid and enforceable under the circumstances of this case. Furthermore, under the Pennsylvania Skier's Responsibility Act (the "Act"), Plaintiff Lin assumed the inherent risk of colliding with snow making equipment while engaged in the activity of skiing. Thus, the Defendant is protected by the Act, which bars the Plaintiffs' claims.

An appropriate Order will be entered in accordance with this memorandum opinion.

**BY THE COURT**:

**/s/ Petrese B. Tucker**

_____

**Hon. Petrese B. Tucker, U.S.D.J.**